# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | **Case No. 15-02700-5-DMW** |
| **PEPPERTREE-ATLANTIC BEACH** ) | **Chapter 11** |
| **ASSOCIATION, INC.** ) | |
| Debtor. ) | |

# AMENDED PLAN OF REORGANIZATION
October 30, 2015

JASON L. HENDREN
N.C. State Bar #26869
REBECCA F. REDWINE
N.C. State Bar #37012

Attorneys for Debtor
HENDREN & MALONE, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 573-1422
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com
      rredwine@hendrenmalone.com

# TABLE OF CONTENTS

I. Summary of Plan ..........................................................................................................3

II. Definitions ...................................................................................................................4

III. Treatment of Administrative and Priority Tax Claims ............................................6
    a. Administrative Claims ...........................................................................................6
    b. Priority Tax Claims ................................................................................................6

IV. Classification and Treatment of Claims and Interests ............................................6
    Class I – Priority Non-Tax Claims ..............................................................................6
    Class II – Ad Valorem Taxes .......................................................................................6
    Class III - Unit Owners ................................................................................................6
    Class IV – Former Unit Owners ..................................................................................7
    Class V – Non-Insider General Unsecured Claims .....................................................7
    Class VI – Insider General Unsecured Claims ...........................................................8
    Class VII – Equity Security Holders ...........................................................................8

V. Means of Implementation and Execution of the Plan ..............................................8

VI. Similar Treatment for Each Claim within a Class .................................................12

VII. Provisions Governing Distributions .........................................................................12

VIII. Rejection of Executory Contracts ............................................................................12

IX. Acceptance or Rejection of Plan ...............................................................................12

X. "Cramdown" for Impaired Creditors Not Accepting the Plan ..............................14

XI. Retention of Jurisdiction ...........................................................................................14

XII. Miscellaneous Provisions ..........................................................................................15

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 15-02700-5-DMW |
| PEPPERTREE-ATLANTIC BEACH | ) | Chapter 11 |
| ASSOCIATION, INC. | ) | |
|     Debtor. | ) | |

## AMENDED PLAN OF REORGANIZATION

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtor, Peppertree-Atlantic Beach Association, Inc. (hereinafter "Debtor" or "Peppertree"), hereby submits the following Amended Plan of Reorganization:

### I. SUMMARY OF PLAN

The Debtor is a North Carolina non-profit corporation with an office and principal place of business in Atlantic Beach, Carteret County, North Carolina. The Debtor is located at 715 West Fort Macon Road in Atlantic Beach and owns fractional timeshare interests in common with other unit owners in 63 condominium units located at the Peppertree Atlantic Beach Resort. Additionally, the Debtor holds a one-third interest, as a tenant in common, in the general common properties of the Peppertree Atlantic Beach Resort. The Debtor intends to demolish the existing condominium structures contained in the fourteen buildings encompassed within Phase 1 of the Resort in order to market and sell the underlying real estate. This plan will enable the Debtor to maximize value for the benefit of all creditors and interest holders in this case.

The Debtor's Amended Plan of Reorganization ("Plan") is based upon the Debtor's belief that the interests of its creditors and interest holders will be best served if it is allowed to orderly liquidate the real property.

The Debtor will pay the administrative costs in full on the Effective Date or upon receipt of its share of the Liquidation Proceeds.

Any and all priority taxes due and owing to the Internal Revenue Service, N.C. Department of Revenue, Carteret County Revenue Department, or any county or city taxing authority shall be paid from the Liquidation Proceeds.

The Debtor will treat the claims or interests of the Ad Valorem Taxes, Unit Owners, Former Unit Owners, Non-Insider General Unsecured Creditors, Insider General Unsecured Creditors and Equity Security Holders as outlined more fully herein.

The unsecured creditors shall receive distributions from the Liquidation Proceeds, as available, after payment of all senior classes of creditors. The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific

3

amounts and terms of payment will be made according to the treatment of each respective creditor.

## II. DEFINITIONS

1. "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended. References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, et seq.

2. "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

3. "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

4. "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

5. "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §1129.

6. "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

7. "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

8. "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

9. "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

10. "DEBTOR" shall mean Peppertree-Atlantic Beach Association, Inc.

11. "DISBURSING AGENT" shall mean Jason L. Hendren, attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

12. "DISCLOSURE STATEMENT" shall mean the Amended Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

13. "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

14. "EFFECTIVE DATE" shall be the date that is fifteen (15) days following entry of the Order Confirming Plan.

15. "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

16. "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

17. "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition, to wit, Thursday, May 13, 2015.

18. "PLAN" shall mean this Amended Plan of Reorganization in its present form or as it may be amended or modified.

19. "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under §507.

20. "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

21. "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

22. "SUBSTANTIAL CONSUMMATION" shall mean the time the Reorganized Debtor has commenced the distribution of initial Plan payments to creditor classes.

23. "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(7).

24. "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a tax claim, administrative claim, or secured claim.

25. "LIQUIDATION PROCEEDS" shall mean: (a) all funds resulting from the liquidation of the real property associated with the fourteen (14) condominium buildings in Phase I of Peppertree Atlantic Beach Resort, less costs of liquidation; and (b) any other funds recovered from the sale of assets on Exhibit "A" to the Disclosure Statement.

### III. TREATMENT OF ADMINISTRATIVE CLAIMS

Administrative costs and expenses approved by the Court shall be paid in cash and in full on the Effective Date of the Plan to the extent of available funds. Otherwise, administrative costs shall be paid from distribution of the Liquidation Proceeds.

### IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and are excluded from the following Classes. Section III describes the treatment of Administrative Claims. For the purposes of this Plan, Holders of Claims against, or Interests in, the Debtor are classified as follows in accordance with section 1122(a) of the Bankruptcy Code:

A. **Class I – Priority Non-Tax Claims**. Holders of Allowed Claims in Class I shall receive distributions from available Liquidation Proceeds prior to distributions to general unsecured creditors in Classes V and VI. The Debtor does not believe there are any claims in this class.

B. **Class II – Ad Valorem Taxes.**

(1) Classification. Class II consists of claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of Peppertree based upon the value of the property assessed.

(2) Impairment. This class will be impaired.

(3) Treatment. Allowed claims in this class shall be paid in full from Liquidation Proceeds resulting from the disposition of the property for which the tax was assessed. The Debtor shall pay interest on such claim at the rate set by applicable non-bankruptcy law, determined as of the calendar month in which the Plan is confirmed in accordance with Section 511 of the Bankruptcy Code.

C. **Class III – Unit Owners.**

(1) Classification. This class consists of all Unit Owners (with the exception of the Debtor) within the Peppertree-Atlantic Beach Phase I Condominium, which is comprised of sixty-three (63) units in fourteen (14) buildings and common areas within Phase 1, all located at 715 West Fort Macon Road in Atlantic Beach (the "Real Property").

(2) Impairment. This class will be impaired.

(3)     Treatment.  In accordance with the Means of Execution set forth in Section V herein, the Debtor intends to demolish existing structures then market the Real Property by way of a private listing with a court-approved broker.  As described more fully in the Amended Disclosure Statement, Unit Owners are requested to sign a Consent Order permitting the sale of the Real Property, free and clear of their interests, so that the Debtor can deliver marketable title to the future purchaser of the Real Property at closing.  Any Unit Owner who does not sign the Consent Order permitting the sale will be named as a Defendant in a lawsuit before the Bankruptcy Court, in order to obtain clear title to the Real Property.  Unit Owners are urged to execute the Consent Order in order to avoid litigation costs, prevent further delay of distributions and maximize the distribution to all Unit Owners from the Liquidation Proceeds.

Following the sale of the Real Property, Unit Owners shall receive a distribution from the Liquidation Proceeds on account of each Unit Owner's allocable fractional share of the Real Property.  Each Unit Owner's distribution shall be reduced by the amount of any unpaid maintenance fees for any year prior to 2015.  The applicable fractional ownership shares and record of unpaid maintenance fees for each Unit Owner are set forth on Exhibit "B-1" to the Debtor's Amended Disclosure Statement. Except as provided above, the Debtor shall not make any further distribution to Members in this Class on account of any asserted claims associated with the loss of their timeshare weeks.  Members of this class are directed to Section V of this Amended Plan, as well as the Amended Disclosure Statement, for additional information.

**D.     Class IV – Former Unit Owners.**

(1)     Classification.  This class consists of those former Unit Owners who, prior to the Petition Date on May 13, 2015, elected to exchange their timeshare week in Peppertree-Atlantic Beach Phase I for a deeded timeshare week in Phase II or III.  These Unit Owners have voluntarily relinquished their interest in the Real Property to the Debtor.

(2)     Impairment.    This class will be impaired.

(3)     Treatment.  Members of this class shall not receive any distribution from the Debtor on account of any alleged ownership interest in the Real Property.  Members of this class are deemed to have no valid ownership interest, as their interest in the Real Property has been voluntarily relinquished in exchange for a week in Phase II or III.

Upon information and belief, individual Unit Owners representing five hundred thirteen (513) timeshare weeks elected to relinquish their interest in the Real Property to the Debtor.  Based upon this election, Members in this class shall receive no distribution on account of the former ownership interest in the Real Property.  Members of this class are identified on Exhibit "B-2" of the Amended Disclosure Statement.

**E.     Class V – Non-Insider General Unsecured Claims.**

(1)     Classification.    This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtor's petition or as otherwise approved by the Court, except for the claims otherwise treated in Classes III, IV, and VI herein.

7

(2)     <u>Impairment</u>.  This class will be impaired.

(3)     <u>Treatment</u>.  Members of this class shall receive distributions from the Debtor's share of the remaining Liquidation Proceeds, if any, following satisfaction of all claims and interests set forth in Section III and Section IV, Classes I and II.  Members of this class are identified on Exhibit "B" of the Amended Disclosure Statement.

F.     **<u>Class VI – Insider General Unsecured Claims</u>**.

(1)     <u>Classification</u>.   This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtor's petition or as otherwise approved by the Court that are held by insiders of the Debtor, except for claims otherwise treated in Classes III and IV.

(2)     <u>Impairment</u>.  This class will be impaired.

(3)     <u>Treatment</u>.  Members of this class shall receive distributions from the Debtor's share of the remaining Liquidation Proceeds, if any, following satisfaction of all claims and interests set forth in Section III and Section IV, Classes I, II, and V.  Members of this class are identified on Exhibit "B" of the Amended Disclosure Statement.

G.     **<u>Class VII – Equity Security Holders.</u>**

(1)     <u>Classification.</u>  This class consists of the statutory equity interests of the Unit Owners.

(2)     <u>Impairment</u>.   This class will be impaired.

(3)     <u>Treatment</u>.   Members of this class shall not receive any distributions or retain any value on account of their interests in the Debtor unless all senior classes of creditors are satisfied in full prior to any distribution to this Class.

## V.  MEANS OF IMPLEMENTATION AND EXECUTION OF THE PLAN

A.     <u>Distribution of Liquidation Proceeds.</u>  The Debtor shall make payments under the Plan from the Liquidation Proceeds generated from the sale of the Real Property.

1. The following items shall be paid from the gross proceeds of the sale of the Real Property before distribution to any Unit Owner:
    a. Ad Valorem Taxes;
    b. Costs of Litigation necessary to obtain marketable title for conveyance of the Real Property under 11 U.S.C. § 363(h) of the United States Bankruptcy Code;
    c. Real Estate Broker's Commission as approved by the Bankruptcy Court;
    d. Demolition costs in excess of funds donated by Festiva Resorts Adventure Club Members' Association, Inc. in the amount of $350,000.00 as discussed in

       the Amended Disclosure Statement, less the Estate's allocable share of such excess costs based upon the Estate's fractional ownership percentage; and

    e. All closing costs associated with the sale of the Real Property.

2. Following the distributions set forth above, the Debtor shall distribute the remaining net proceeds of the sale to the Unit Owners in accordance with each Unit Owner's allocable ownership percentage as set forth on **Exhibit "B-1"** to the Amended Disclosure Statement, subject to any reductions or additions as described in the Plan.

3. Except as set forth above, all other payments required under the Plan shall be funded from the net proceeds of sale retained by the Debtor on account of its ownership of PAB I units.

    B.    <u>Unclaimed Property</u>.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim or interest and the Disbursing Agent shall not attempt to make any further distribution to such holder of the claim.  Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

    C.    The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

    D.    The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

    E.    Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a final Order of the Court.

    F.    Confirmation of this Plan shall constitute a finding that the Debtor does not waive, release or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and, any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548 and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan.  Further, the Debtor retains its rights to assert and pursue all claims under 11 U.S.C. §542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

G.  Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

H.  All objections to claims, fee applications and adversary proceedings will be filed with the Court within ninety (90) days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

I.  <u>Injunction</u>.  From and after the Confirmation Date, all holders of "Claims" or "Interests" (including, without limitation, Secured Claims, General Unsecured Claims, and all Priority Claims) against the Debtor and the Debtor in Possession are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim or Interest against the Debtor, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, or the Assets, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Assets, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a contested Claim or Interest may continue to prosecute its proof of Claim in accordance with the Plan and all holders of Clams and Interests shall be entitled to enforce their rights under the Plan.

J.  <u>Revocation of Plan</u>.  The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation order.  If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

K.  <u>Authority of the Debtor</u>.  The Debtor shall have the authority to implement any term or provisions over this Plan.  To the extent that any right is granted to the Debtor under the Plan, then the Debtor shall have authority for so long as the corporation is in existence to carry out any and all acts necessary to fulfill the terms of the Plan.  Any authority granted to the Debtor pursuant to this Plan, shall be construed as authority granted to the Debtor.

L.  <u>Retention of Properties and Continuation of Orderly Liquidation</u>.  The Debtor shall retain all properties. The Debtor shall orderly liquidate its remaining assets consistent with the terms of this Plan as quickly and efficiently as possible subject, however, to the Marketing Period provided by Paragraph M. below.

M.  <u>Liquidation of Assets.</u>  The Debtor will endeavor to sale the Real Property as follows:

(1) The Debtor shall, subject to separate Court Order, demolish all structural improvements located on the Real Property that are subject to the condemnation notice issued by the

10

Town of Atlantic Beach. Subject to Court approval, the proposed demolition will occur prior to confirmation of the Debtor's Plan.

(2) The Debtor will file a separate Motion authorizing the employment of Byrd Surveying, P.A. and Linwood Byrd, Professional Land Surveyor, to produce a full survey of the boundaries of the Real Property.

(3) The Debtor shall obtain orders from the Bankruptcy Court pursuant to 11 U.S.C. § 363(h), by consent or through litigation, authorizing the conveyance of the Real Property free and clear of all claims and interests.

(4) The Debtor has reviewed available marketing options and is actively meeting with proposed brokers in order to determine the best marketing strategy to maximize a return to all Unit Owners and other holders of allowed claims. The Debtor will file a separate Motion authorizing the employment of a broker upon completion of due diligence.

(5) The Real Property shall be marketed by the Court approved broker. The Real Property shall be marketed free and clear of all liens, claims and interests, with all liens, claims and interests being transferred to the proceeds of sale, which will be distributed in accordance with the terms of the Plan.

(6) The marketing and sale of the Real Property shall be for an initial period of up to twelve (12) months from the Effective Date (the "Initial Marketing Period"). Debtor shall also have the right to extend the Initial Marketing Period for an additional twelve (12) month period, subject to Court approval. Such an extension shall be by the Debtor's motion, seeking a Court order approving the same, subject to a fifteen (15) day notice to creditors holding allowed claims and interests. Such extension shall be allowed and granted by the Court upon a showing by the Debtor of (i) the reasonableness of its marketing effort and (ii) good cause for the extension. The Initial Marketing Period, as and to the extent extended by the provisions of this paragraph, is defined collectively as the "Marketing Period".

(7) At the expiration of the Marketing Period, Debtor shall obtain Court approval for, and will implement, a public auction bid procedure approved at that time by the Bankruptcy Court to sell the Real Property.

N. <u>Exemption from Transfer Taxes.</u> Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax. All sale transactions consummated by the Debtor and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including, without limitation, the sale by the Debtor of owned property pursuant to section 363(h) of the Bankruptcy Code and the assumption, assignment and sale by the Debtor of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, will be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, will not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. In addition, each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the

foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of this Plan.

O.  <u>Assignment of Insider Litigation</u>.  As more fully set forth herein, the Debtor made certain payments to third parties that are Insiders within the meaning of 11 U.S.C. § 101(31).  The Debtor believes that such payments were made in the ordinary course of business and that the Debtor received reasonably equivalent value for such transfers.  The Debtor has not investigated any other claims against statutory insiders.

On or about August 31, 2015, this Court entered an Order appointing a Committee of Timeshare/Homeowners (the "Committee").  Thereafter, on or about September 14, 2015, this Court entered an Order appointing Morris, Russell, Eagle & Worley, PLLC ("MREW") as Committee counsel.  Pursuant to the Plan, the Committee, by and through appointed counsel, shall investigate and pursue all claims, if any, against insiders of the debtor as defined by 11 U.S.C. § 101(31).

## VI. SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan.  The Debtor, upon full payment as called for under any notes and deeds of trust, shall be entitled to have the notes marked paid and satisfied and the deeds of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## VII. PROVISIONS GOVERNING DISTRIBUTIONS

A.  <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.  <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date, unless otherwise stated herein.

## VIII. REJECTION OF EXECUTORY CONTRACTS

Except as specified in this Plan, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected.

## IX. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.  <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims

shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

  B. <u>Acceptance by a Class of Creditors</u>.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

  C. <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

  (1) Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

  (2) Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

  (3) Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

  (4) Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

  D. <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

  E. <u>Acceptances Necessary to Confirm the Plan</u>.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.  <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any class votes against the plan, the Debtors hereby request and move the Court under the provisions of this Plan outlined in Section IX herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code.  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

## X.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XI.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, <u>inter alia</u>:

1.  to determine any and all objections to the allowance of claims and/or interests;

2.  to determine any and all applications for allowance of compensation for periods prior to the Confirmation Date;

3.  to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.  to determine all controversies and disputes arising under or in connection with the Plan;

5.  to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.  to effectuate payments under, and performance of, the provisions of the

Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

      7.    to determine such other matters and for such other purposes as may be provided for in the confirmation order;

      8.    to determine all disputes regarding property of the estate;

      9.    to establish and adjust procedures for the orderly administration of the estate;

      10.    to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

      11.    to replace the Debtor-in-Possession with a Trustee for good cause shown.

## XII.  MISCELLANEOUS PROVISIONS

    A.    <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

    B.    <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

    C.    <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

    D.    <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

(this space intentionally left blank)

Respectfully submitted, this the 30th day of October, 2015.

                s/ Jason L. Hendren
                JASON L. HENDREN
                N.C. State Bar #26869
                REBECCA F. REDWINE
                N.C. State Bar #37012

                HENDREN & MALONE, PLLC
                4600 Marriott Drive, Suite 150
                Raleigh, NC 27612
                Telephone:  (919) 573-1422
                Facsimile:  (919) 420-0475
                Email:  jhendren@hendrenmalone.com
                       rredwine@hendrenmalone.com
                Attorneys for Debtor


                PEPPERTREE-ATLANTIC BEACH
                ASSOCIATION, INC.
                s/ James Badia
                James Badia, Director

## **CERTIFICATE OF SERVICE**

I, Jason L. Hendren, 4600 Marriott Drive, Suite 150, Raleigh, North Carolina 27612, certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on the 30th day of October, 2015, I served copies of the foregoing document on the parties listed below, either electronically or by depositing a copy of the same in the United States mail bearing sufficient postage.

I certify under penalty of perjury that the foregoing is true and correct.

Respectfully submitted, this the 30th day of October, 2015.

                                                 s/ Jason L. Hendren
                                                 JASON L. HENDREN
                                                 N.C. State Bar #26869
                                                 REBECCA F. REDWINE
                                                 N.C. State Bar #37012
                                                 HENDREN & MALONE, PLLC
                                                 4600 Marriott Drive, Suite 150
                                                 Raleigh, NC 27612
                                                 Telephone: (919) 573-1422
                                                 Facsimile: (919) 420-0475
                                                 Email: jhendren@hendrenmalone.com
                                                                   rredwine@hendrenmalone.com
                                                 Attorneys for Debtor

TO:

| | |
|---|---|
| Marjorie K. Lynch<br>Bankruptcy Administrator | (via CM/ECF) |
| C. Scott Kirk<br>Office of the Bankruptcy Administrator | (via CM/ECF) |
| Cindy G. Oliver<br>Benjamin L. Worley<br>Counsel for the Timeshare Owners' Committee | (via CM/ECF) |
| Russell C. Alexander<br>Counsel for multiple unit owners | (via CM/ECF) |

Harriett Worley (via CM/ECF)
Counsel for NCDOJ- Consumer Protection Section

Hope D. Carmichael (via CM/ECF)
Joseph E. Propst
Special Counsel to the Debtor

Nichole M. Hatcher (via CM/ECF)
Counsel for Robin Y. Horne

Peppertree-Atlantic Beach Association, Inc.
P.O. Box 1068
Atlantic Beach, NC 28512